**FORT MIAMI RACEWAYS, INC., Plaintiff-Appellant, v. LUCAS COUNTY AGRICULTURAL SOCIETY, Defendant-Appellee.**

Ohio Appeals, Sixth District, Lucas County.

No. 4784. Decided March 1, 1955.

264

Shumaker, Loop & Kendrick, Toledo, on behalf of the plaintiff-appellant.

Boggs, Boggs & Boggs, Toledo, on behalf of the defendant-appellee.

(GRIFFITH, NICHOLS and PHILLIPS, JJ, of the Seventh District, sitting by designation in the Sixth District.)

## OPINION

By GRIFFITH, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court declaring the forfeiture of a lease.

On March 13, 1948, the Lucas County Agricultural Society executed a lease to the Toledo Fort Miami Raceways, Inc., of certain portions of the Fort Miami Fairgrounds to be used for horse racing and concessions. The term was from May 1, 1948, to November 15, 1952 (not to exceed forty-four nights of each year), with option to lessee to renew for an additional five years. On February 6, 1952, the Toledo Fort Miami Raceways, Inc., exercised its option of renewal thereby extending the term to November 15, 1957.

On July 16, 1952, with the consent of the Lucas County Agricultural Society, the lease, which had been duly recorded, was assigned to the plaintiff corporation. Plaintiff, in the fall of 1952 and spring of 1953, conducted running races thereon and its concessionaire, Ohio Sportservice, Inc., sold alcoholic beverages at each session of these horse races.

On September 18, 1953, the Lucas County Agricultural Society, by

resolution of its Board of Directors, declared the lease terminated and notified the plaintiff that it was re-entering and repossessing the leased premises. Hence, this suit seeking relief of an equitable character to avoid such forfeiture.

It is unnecessary for this Court to pass upon the question of whether there was a subletting of the lease to Toledo Jockey Club, Inc., or to Ohio Sportservice, Inc., or to engage in an exhaustive dissertation on their corporation structures in relation to each other and in their relation to the original lessee and its assignee, the plaintiff in this case, for the reason that the facts are practically conceded in this case.

The lease provided:

"Lessee agrees not to sell, permit to be sold, kept, or permit to be kept, on said premises spirituous, vinous, malt, or any intoxicating liquor, and lessee agrees to strictly conform to all laws, ordinances, and other regulations pertaining to intoxicants."

During the entire history of this lease up to the date of forfeiture (September 18, 1953), the following three sections of the General Code were in full force and effect.

**Sec. 9884-4 GC** provided:

"County agricultural societies shall not sell or grant to any person or persons, or permit in any manner, the privilege of selling, dealing, or bartering in spirituous, vinous or malt, liquors, allow, or tolerate immoral shows, lottery devices, games of chance, or gambling of any kind, including pool selling and paddle wheels, in or about any building or anywhere on its fairgrounds, at any time."

This is a special statute prohibiting the sale of liquors on fairgrounds. It not only prohibits the county agricultural society from selling but prohibits it from granting to, or permitting, any person the privilege of selling.

**Sec. 6207 GC,** reads as follows:

"The unlawful sale or giving away of intoxicating liquors shall forfeit all rights of the lessee or tenant under any lease or contract of rent upon premises where such unlawful sale or giving away takes place."

**Sec. 6211 GC,** reads:

"**Leases void.** All contracts whereby any building or premises are rented, leased, used or occupied shall become void when 'such building or premises are used in whole or in part, for the sale of intoxicating liquors contrary to law, and the lessor, on and after selling or giving intoxicating liquors as aforesaid, shall be held to be in possession of such building or premises."

These three statutes are in pari materia. They stand together and relate to the same subject matter. They express the spirit and policy of the intention of the legislature. The legislature has seen fit to restrict the uses of fairgrounds by limiting the powers of county agricultural societies. Not only do the statutes particularize the uses that are prohibited, but they also provide a penalty.

These sections automatically worked a forfeiture of the lease, and Courts of equity do not relieve against statutory forfeiture. **Justice v. Lowe, 26 Oh St 372;** Clark v. Barnard, 108 U. S. Supreme Court Reports, 780; **Nahas v. George, 156 Oh St 52.**

This is only another way of stating the maxim, "Equity follows the law." When liquor was sold on these premises by the plaintiff's concessionaire, which it is admitted occurred, the Lucas County Agricultural Society became reinvested with the possession of the premises, and it was its duty to assert the forefeiture of the lease upon full knowledge of such sale.

The plaintiff stoutly insists upon the doctrine that the prohibition stated in §9884-4 GC is limited to county agricultural societies, and that all other persons and organizations are exempt from its operaton. This is a contention which is wholly untenable.

The statute not only prohibits the agricultural society from selling liquors, but it prohibits it from granting to any person the privilege of selling such, or permitting such sale. This is a civil action to prevent forfeiture, and the line of criminal cases and statutes are of no help in disposing of the issues in this case.

The plaintiff lessee was bound by the terms of the lease, which was a matter of public record and notice to the entire world, and it was bound by the provisions of §§9884-4, 6207 and 6211 GC.

It can have no greater rights than the lease provides, and it is limited in its use of the fairgrounds by the statutory restrictions. The sale of liquor on fairgrounds was in direct opposition to and in defiance of the statutes of Ohio and was consequently unlawful.

The Trial Court found that the plaintiff breached the lease by permitting the sale of intoxicating liquors on the premises during the racing meets held in 1952 and 1953, and that such sales constituted a breach even though they were made on the premises with the knowledge and consent of the Lucas County Agricultural Society, and even though the State Liquor Board had issued to the plaintiff a license; it found that the agricultural society did not have the right, under the laws of Ohio, to waive such breach and was not estopped from asserting such breach as a ground for forfeiture and, that by operation of law, the Lucas County Agricultural Society was deemed to be in possession of the leased premises without the necessity of a formal re-entry and, that by reason of the various and numerous corporate structures and matters set forth in the Bill of Exceptions, the plaintiff did not come into Court with clean hands.

Equity denies relief to a suitor who comes into Court with unclean hands, and even though the defendant was in. pari delicto, that is no grounds for granting relief to the plaintiff.

The intendment of the statutes shows wisdom and foresight in the recognition of the evil of permitting the sale of liquors on fairground properties. Our conclusion, therefore, is that the provisions of §9884-4 GC, prohibiting the sale, granting or permitting of sale, are mandatory and cannot be waived by the agricultural society and it being admitted that liquors were sold, the lease was rendered void, and the lessor automatically reinvested with the possession of the same.

Public policy as well as the law, as we see it, demands that the judgment of the Common Pleas Court be affirmed.

PHILLIPS, J, concurs.
NICHOLS, J, dissents.